BANK OF BENNINGTON *v.* ASAHEL BOOTH AND OTHERS.

*Held,* that a debtor to the Bank of Bennington had a right to pay to an equitable assignee of the Bank, who was prosecuting the claim in the name of the Bank for his own benefit, the amount of the debt, in the bills of the Bank, though they were of nominal value; under the section of the charter of the bank which provides that the bills of the bank shall be received on all demands originally due to the bank; but that the assignee

could not be compelled to receive the costs, which accrued in the prose-cution of the claim by him, in such bills,—the defendant having had notice of the assignment.

This was an action upon a jail bond, taken upon the commitment of Asahel Booth on an execution in favor of the Bank of Bennington, and assigned by the sheriff to the bank. The original debt was a note discounted at the bank. After the commitment of Booth the bank commenced an action against the town of Bennington, for the default on said execution of one Rudd, their constable, in whose hands the said execution was placed, and recovered judgment against the town for the amount of the debt; which was collected, but never received by the bank,—they having suspended payment, and receivers having been appointed. The town of Bennington then sued the bail of Rudd, and collected the same amount of them, and the bail by the consent of the bank, commenced this action, and prosecuted the same for their sole benefit,—of which the defendants, soon after its commencement, had notice.

At the December Term of the county court, 1842, the defendants brought into court, in bills of the bank of Bennington, the amount of the debt, and all costs, taxed at $67.23, and claimed that the same should be received in payment thereof.

The 17th section of the statute incorporating the bank is as follows : "The bills and notes of said bank shall at all times be received by said bank on all judgments, executions, or demands, of any nature whatsoever, originally due or owing to the said bank, or which may be their property at the time of payment; and all bills and notes shall be made payable at said bank, at Bennington. Provided, that no note, originally due or payable to said corporation, shall be indorsed, so as to enable the indorsee to maintain an action thereon in his or their own name."

The county court held that said bills should be received in payment of said debt and costs, and rendered judgment for the defendants. Exceptions by plaintiff.

*H. Kellogg* for plaintiff.

This case must depend upon the construction and effect to be given to the 17th section of the statute incorporating the bank of Bennington. Every statute should receive such a construction as

46

shall effect the intention of the legislature, and no more; 1 Bl. Com. 61; and that it may have a reasonable effect.   8 Mass. 472. The intention of this section undoubtedly was to prevent speculation on the part of the *bank,* either by directly refusing to receive its bills in payment of its demands, or by indirectly accomplishing the same object by transferring the demands.   But in this case the bank is merely a nominal party, having no interest in the suit.

Again, when a collateral matter arises from the general provisions of a statute, which happens to be unreasonable, then the court are to conclude that this unreasonable consequence was not foreseen by the legislature, and they are at liberty to construe the statute upon equitable principles, and, *quoad hoc,* disregard it.   1 Bl. Com. 91.   7 Johns. 502, 542.   Bac. Ab., Tit. Statute, p. 384—8. Plowd. 109, 365, 467.   The 22d section of the same statute declares, that the same shall be benignly and favorably construed in all courts and places, for any beneficial purpose therein mentioned.

At the time these bills were brought into court, the bank was not in existence, it had failed, its charter had expired, and all its effects were in the hands of trustees for the benefit of its creditors, and under the control of the court of chancery.   The bail of Rudd could alone discharge the debt, as courts always regard the *real* and not the *nominal* party.

But, if the bills must be received in payment of the debt, it is not so as to the costs.   Those never accrued to the bank, and belong to the attorney in the suit.

*Wm. S. Southworth* for defendants.

1. This debt was originally due to the bank; for it arose from a discount by the bank.   True, it was a claim in the name of the sheriff after the giving the bond and before assignment; but he held it for the benefit of the bank; claims against him could not have been offset, if the suit had been in his name, but the bills of the bank might have been.   *Weeks* v. *Hunt,* 6 Vt. 15.   *Lyman* v. *Mower,* 2 Vt. 517.   7 Vt. 74.   The statute cannot be evaded by forcing the debtor to give a jail bond, and then sueing it in the sheriff's name.   That the assets of the bank are in the hands of receivers does not vary the case.   So long as the bank was solvent, the provision of the statute was of no benefit; it was in view of the possible depreciation of the paper that it was made.

2. The costs are incident to the judgment, and are not divisible from it. It is obvious that the intention of the statute was, not merely to give persons dealing with the bank the privilege of paying their contracts in its bills, but also to prevent any endorsement, or assignment, which should subject persons to pay costs in specie.

The statute of 1809, [Sl. St. 103—4] provided that any person, sued upon a contract made with a bank, might plead in offset the bills of the bank,—and this in all cases, even after judgment recovered and execution issued, and though the suit were brought by a *bona fide* indorsee in his own name. The right of payment is as general and comprehensive under the act of incorporation in this case, as that of pleading offsets was intended to be by that statute.

The opinion of the court was delivered by

BENNETT, J. The statute incorporating the bank provides that " the bills of the bank shall at all times be received by the bank, on all judgments, executions, or demands of any nature whatsoever, originally due or accruing to the bank, or which may be their property at the time of payment."

It seems the bank have collected or secured to themselves the amount of the debt, now sued for, out of the town of Bennington, by reason of the default of the constable who had the execution to collect, and for whose default the town by statute are made liable. The town have sued the bail of the constable, and the bail have settled the debt with the town. The case finds that the present suit was commenced by the bail of the constable for their own use, and with the consent of the bank.

The bail of the constable having paid the debt to the town, and the town to the bank, they are entitled to be subrogated in chancery to all the rights of the bank, equally as they would have been, if they had paid the debt directly to the bank; and the rights of the parties are, in fact, now the same, as if there had been an order of subrogation in a court of chancery. What then are the rights of the defendants in regard to the payment of the debt in bills issued by the bank of Bennington? The debt was due to the bank upon paper discounted by them, and no one can contest the point, that the defendants had the right to pay the debt to the bank in their own bills, so long as they had an interest in it. This is both within the letter and spirit of the statute.

Though we are disposed to consider the bail of the constable as *equitable assignees*, and as in effect *subrogated* to the rights of the bank, yet they can have no greater rights than the bank themselves had. So far then as the debt is concerned, inasmuch as that accrued to the bank, the defendants must have the same right to pay it in bills of the bank, as against the equitable assignees, as they would have had against the bank themselves. The equity of the statute manifestly requires this. But how does the case stand relative to the costs which have accrued in this suit? These have been incurred by the bail of the constable while standing in the light of an assignee of the bank, and prosecuting this claim for their own benefit. They are *severable* in their amount from the debt, and they never in fact accrued, or belonged, to the bank.

The bank never had a claim to receive them. To hold that these costs should be paid to the assignee in bills of little or no value does injustice, and is not required by the equity of the statute, and I think not by the letter. To require the costs to be paid in good money is no hardship upon the defendants.

They had notice that the bail of the constable was prosecuting this claim for their own benefit, and it was their duty to have paid the debt before the costs had been made, if they wished to avail themselves of the benefit of the charter to pay in bills of the bank.

The result is, the judgment of the county court is reversed, and judgment is rendered for the plaintiff, for damages assessed to the amount of the costs, which we understand were taxed at $67,23.